IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM LEE CHINNERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:21-cv-00055 |
| ) | |
| F/N/U GRAVES, et al., ) | JUDGE CAMPBELL |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff William Lee Chinners, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee, has filed a pro se Complaint for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983, along with an application to proceed in forma pauperis (IFP). (Doc. Nos. 1, 2.) The matter is before the Court for a ruling on Plaintiff's IFP application and an initial review of his Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED AS A PAUPER

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the Court **GRANTS** his application (Doc. No. 2) to proceed IFP in this matter.

Under Section 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby **ASSESSED** a $350 filing fee, to be

paid as follows:

(1) The custodian of Plaintiff's inmate trust-fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (A) the average monthly deposits to [Plaintiff's] account; or (B) the average monthly balance in [Plaintiff's] account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust-fund officer must withdraw from Plaintiff's account and pay to the Clerk monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $350 filing fee is paid in full. *Id.* § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this Court as required by this Order, he must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the Warden of the prison in which Plaintiff is currently housed to ensure that the custodian of Plaintiff's inmate trust account complies with the portion of 28 U.S.C. § 1915 pertaining to payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance with this Order.

2

Case 1:21-cv-00055   Document 5   Filed 11/22/21   Page 2 of 10 PageID #: 39

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a Section 1983 claim, Plaintiff must allege: "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)); 42 U.S.C. § 1983.

### B. Plaintiff's Allegations

Plaintiff claims that he was deprived of due process and subjected to cruel and unusual punishment based on the fact of his confinement, as well as the conditions in which he was confined, following the July 2021 decision of the Tennessee Parole Board granting his release on

3

parole. (Doc. No. 1 at 3–4; Doc. No. 1-1 at 1.) He alleges that, after his family secured approval of his "home plan" in an early-August meeting with his parole officer, his release date was set for August 16, 2021. (Doc. No. 1-1 at 1.) Plaintiff's family drove to SCCF to pick him up on August 16, but during the process of executing the paperwork required to release him, Officer Graves received a phone call informing her that Plaintiff was subject to a detainer out of South Carolina. (*Id.* at 2.) He was returned to the inmate population and his family was sent home while the matter of the detainer was investigated, but because the processing of his release had been nearly completed and Plaintiff had already turned in his extra clothing and hygiene items, he was made to endure several days without items to bathe with or clean clothes to change into. (*Id.* at 2–3.) He was also temporarily housed on the SCCF compound rather that the annex where he had been housed prior to parole proceedings, with the explanation that being subject to a detainer prevented housing in the annex. (*Id.* at 2.) On August 19, Plaintiff called his family to express his frustration, and his brother told him Officer Graves had also called to tell the family to remain calm, that she was "trying everything to get [Plaintiff] released." (*Id.* at 3.)

On August 20, 2021, Officer Graves finally contacted an official in South Carolina who confirmed that there was a detainer against Plaintiff, but it was for a nonviolent misdemeanor and extradition therefore would not be sought. (*Id.* at 4.) Officer Graves told the official that the National Crime Information Center (NCIC) reflected a detainer for armed robbery and gun charges out of South Carolina, but the official repeated that no felony detainers existed. (*Id.*) Officer Graves immediately communicated this clarification to officials in Nashville, to begin the process of arranging a release date for Plaintiff. (*Id.* at 5.)

On August 23, Plaintiff was moved off the compound and back to the safer environs of the SCCF annex. (*Id.*) However, in the meantime, because the computer system reflected his parole

4

and release as of August 16, Plaintiff's funds had been removed from his inmate trust account and placed on a debit card, and his treatment order for hepatitis-C medication had been discontinued. (*Id.* at 6–7.) Plaintiff missed two days of prescribed medication before the nursing staff corrected his status in the computer system; was denied a change of clothes for ten days; and could not purchase items from the commissary for a time due to his lack of access to funds. (*Id.* at 7.) Plaintiff's cellmate helped him by providing commissary items during the time that Plaintiff could not purchase them for himself. (*Id.*)

While awaiting a new release date, Plaintiff sought to reenter a class he had been taking prior to his parole proceedings, because completion of the class would earn him "60 days off [his] end sentence." (*Id.* at 8.) But the instructor refused to allow his reentry, because Plaintiff had missed more than three classes while preparing for his release on parole. (*Id.*) Plaintiff also inquired about being assigned a job while he had to remain at SCCF, so that he could earn job credit against his sentence; this request was also denied. (*Id.* at 8–9.) When he continued to inquire about his release date, Plaintiff was threatened with placement in segregation if he kept asking questions. (*Id.* at 9.) His cellmate contacted his family and told them that Officer Graves had sent two emails to officials in Nashville seeking clarification of Plaintiff's status and was still awaiting a response. (*Id.*)

On August 30, 2021, Plaintiff's unit counselor told him that an officer at SCCF intake had "verified with South Carolina [Plaintiff] does not have felony charges and they do not want [him] on the nonviolent misdemeanor[,] no extradition[,] [h]e's waiting on parole cert log to issue a new parole certificate." (*Id.* at 11.) The next day, Plaintiff again requested that he be assigned a job so that he could earn job or program credits and pay "while awaiting information from cert log." (*Id.*) Plaintiff was eventually told that he could not receive appointment to a new job because he

5

continued to be listed in the computer system as enrolled in a program that prevented job appointment. (*Id.* at 12.)

On September 3, 2021, Plaintiff complained about his situation to a different officer, explaining that he "filed paper work to review [his] file and read the actual N.C.I.C. that stated [he] had felony armed robbery and gun charges which the State of South Carolina said [he] didn't have[.]" (*Id.*) He alleges that, "per [Officer] Graves[,] my parole certification was voided because of the felony charges[,] that I should [have] or would have been released if it was just the nonviolent misdemeanor that no extradition was verified on[,] so that would be a clerical mistake on their behalf and not mine." (*Id.* at 13.)

Plaintiff sues "Core Civic – TDOC," IPO Officials Graves and Dondorffer, and Records Officer Kayla Crittendon (Doc. No. 1 at 1–3), seeking an award of compensatory and punitive damages for the injuries he suffered due to Defendants' negligence. (*Id.* at 5.)

**C. Analysis**

According to the Complaint, Plaintiff's damages stem from a clerical error in the NCIC listing of detainers lodged against him. He alleges that this error, discovered on the day he was to be released on parole, produced a variety of negative consequences due to the progress that had already been made in processing his release from SCCF. He further alleges that those consequences proved difficult to rectify in a timely fashion or at all, and that, as a result of a "lack of professional conduct," he is "being held without cause" and has lost his right to earn sentence credits through the prison job program, spent time in a dangerous environment on the SCCF compound, lost his personal property, lived in unsanitary conditions, lost funds, suffered mentally and physically, and been deprived of his medications. (Doc. No. 1 at 9–10.) Notably, Plaintiff does not claim that these negative consequences were produced by any Defendant's misconduct.

Indeed, he alleges that Defendant Graves worked to get to the bottom of the discrepancy between the NCIC report and the report of officials in South Carolina, and that Graves and the other SCCF officials referred to by name in the Complaint[1] were responsive if not sympathetic to his requests for help.

Although Plaintiff claims violations of his constitutional rights to due process and freedom from cruel and unusual punishment (*see* Doc. No. 1 at 3–4), the gravamen of his Complaint is his assertion of harms allegedly suffered due to administrative negligence and mistake related to the NCIC database. He does not invoke any constitutional right to, or liberty interest in, release on parole, and rightly so, as he has no such right or liberty interest. *See Harmon v. Long*, No. 3:15-cv-0736, 2015 WL 4979668, at *1 (M.D. Tenn. Aug. 19, 2015) (finding that inmate "has no constitutional right to be conditionally released on parole before the expiration of his prison sentence," and that "Tennessee law does not create a liberty interest in parole") (citing, *e.g.*, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), and *Seagroves v. Tenn. Bd. of Probation & Parole*, 86 F. App'x 45, 48 (6th Cir. 2003)); *see also Utley v. Rose*, 201 F.3d 442 (Table), 1999 WL 1252880, at *1 (6th Cir. Dec.14, 1999) (dismissing as frivolous the plaintiff's claim based on the defendants' denial of his right to appear at a scheduled parole hearing or to have his name recertified to the parole board as eligible for a new parole hearing)). "Because Tennessee law does not provide any substantive liberty interest in parole, [Plaintiff] may not challenge the procedures surrounding parole determinations" under the Due Process Clause. *Hillsman v. Sugg*, No. 3:15-cv-00391, 2015 WL 3660213, at *2 (M.D. Tenn. June 12, 2015). Furthermore, "[w]here state law does not create any liberty interest in parole, even a parole board's

---

[1] Plaintiff does not attribute any actions or inactions to Defendants Dondorffer and Crittendon, despite naming them as Defendants along with Graves and CoreCivic, the corporation that operates SCCF pursuant to a contract with the State of Tennessee.

7

decision to grant parole does not give rise to such an interest. An inmate who has been notified of a decision to release him on parole—and even been allowed to take affirmative steps toward release—may nevertheless have his parole rescinded and release denied, without any right to further hearing." *Id.* (citing *Jago v. Van Curen*, 454 U.S. 14 (1981)).

Plaintiff understandably complains about his near release on parole and the deprivations of supplies, privileges, and medications that attended the sudden decision not to release him. But Plaintiff does not allege that SCCF personnel deprived him of such supplies, privileges, or medications for any significant length of time, or with any improper motive. Lacking support for a constitutional challenge to the procedure by which the decision to grant parole was reversed, the Complaint is best construed as seeking to recover damages for the cumulative ill effects of having a favorable parole determination unfairly voided because of negligent reporting on the NCIC.

However, this theory of recovery sounds not in federal law but in state tort law. Negligence is simply not a viable theory in an action under Section 1983, *Daniels v. Williams*, 474 U.S. 327, 332–36 (1986), nor is Plaintiff's claim properly asserted against these Defendants, who are not alleged to be responsible for posting anything to the NCIC. According to the Complaint, the NCIC correctly reflected a detainer warrant from South Carolina—albeit one on which South Carolina authorities were unwilling to extradite from Tennessee—and Officer Graves correctly determined that the warrant was active and applicable to Plaintiff. Taking as true that Plaintiff's parole certification was voided not because of this misdemeanor warrant, but because of felony charges that were incorrectly recorded on the NCIC, the Court still cannot find grounds for a claim that Plaintiff's constitutional rights were violated by these Defendants, even construing the Complaint in the light most favorable to him. The Complaint does not allege any error attributable to Defendants, much less "the sort of egregious behavior that rises to the level of a substantive due

8

process violation." *Guertin v. State*, 912 F.3d 907, 923 (6th Cir. 2019) (quoting *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014)). Even if Defendants were alleged to be responsible for posting the inaccurate felony detainer warrant to the NCIC, a "single careless data entry error" that results in an inaccurate warrant listing in the NCIC database "represents . . . garden-variety negligence" that "simply does not give rise to a constitutional claim pursuant to section 1983," even though Plaintiff "was plainly inconvenienced, embarrassed, and distressed by the results of the . . . sloppy electronic record-keeping." *Johnson v. Scotts Bluff Cnty. Sheriff's Dep't*, 245 F. Supp. 2d 1056, 1059–60 & n.3 (D. Neb. 2003).

Moreover, Plaintiff cannot claim in this Court that his constitutional rights were violated because of the loss of his personal property, unless he can establish the inadequacy of state post-deprivation remedies for such loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985). No such allegations are made here.

Finally, any claim to damages for being "held without cause" or "held captive" and deprived of sentence credits as a result of the decision to void Plaintiff's parole certification (Doc. No. 1 at 9–10, 12–13) amounts to an attack on the merits of that decision, and success on the claim would demonstrate the invalidity of Plaintiff's continued incarceration. The claim is therefore barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), until Plaintiff can show that the voiding of his parole certification has been overturned or set aside through state proceedings or a federal writ of habeas corpus. *See Bradley v. Michigan Dep't of Corr.*, No. 14-14573, 2015 WL 3620539, at *3 (E.D. Mich. June 9, 2015) (holding that inmate could not challenge in a civil rights action the decision to revoke his parole status, because that decision had not been "invalidated by state officials" or otherwise set aside, "and success in this action would necessarily demonstrate the

invalidity of his re-incarceration"). The Complaint does not allege that the decision to decertify Plaintiff's parole designation was overturned, nor does the Tennessee Felony Offender website reveal that outcome. Indeed, the Court takes judicial notice that the State's website, https://apps.tn.gov/foil/details.jsp (last visited November 18, 2021), reflects that Plaintiff received another parole hearing on November 3, 2021, as a result of which parole was declined.

In sum, the Complaint must be dismissed for failure to state a claim upon which relief can be granted. The dismissal is without prejudice to Plaintiff's ability to pursue his negligence claims in state court.

### III. CONCLUSION

In light of the foregoing, Plaintiff's IFP application (Doc. No. 2) is **GRANTED**, and the $350 filing fee is **ASSESSED** as described above.

For the reasons given above, this action is hereby **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted. This dismissal is without prejudice to Plaintiff's ability to pursue his claims in state court.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE